IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA M. SANCHEZ, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW J. BREMER; JAMIE CARDENAS; AND CITY OF ALLIANCE, <br><br> Defendants. | 8:11-CV-314 <br><br> MEMORANDUM AND ORDER |

Plaintiff Jessica M. Sanchez brings this action against two police officers, defendants Andrew J. Bremer and Jamie Cardenas, both employed by the third defendant, the City of Alliance, Nebraska. (Filing 1, Complaint, at ¶¶ 7–11). Sanchez alleges that she was the victim of a sexual assault and that when she sought help from the Alliance Police Department, she was wrongfully arrested and subjected to excessive force by Bremer and Cardenas, and that she was wrongfully charged with assault in the second degree and assault on an officer in the second degree.[1] (*Id.*, pp. 4–14.) Sanchez brings her claims under 42 U.S.C. § 1983, alleging that Bremer and Cardenas violated her right to be free from unreasonable seizures under the Fourth Amendment; that Bremer is liable as a supervisor for any acts of Cardenas; and that the City of Alliance caused these violations through its policies, procedures, and customs as established and enforced. (Filing 1, at ¶¶ 11, 33–45.) Sanchez seeks recovery against Bremer in his individual and official capacities, and against Cardenas in her individual capacity. (*Id.* at ¶¶ 8–12.)[2]

In response, defendants filed a Motion for Summary Judgment (filing 19) and a Motion to Stay Discovery and Further Proceedings (filing 22).

---

[1] Neb. Rev. Stat. §§ 28-309, 28-930 (Supp. 2009). The Court cites to the version of the statutes in effect when Sanchez was charged.

[2] Plaintiff's original complaint also included state law claims for negligence and intentional infliction of emotional distress. (Filing 1, ¶ 11–13.) Chief District Judge Smith Camp previously granted defendants' Motion to Dismiss plaintiff's state law claims on other grounds. (Filing 16, Memorandum and Order of December 1, 2011.)

Defendants contend that the doctrine of qualified immunity bars Sanchez's § 1983 claims and, furthermore, shields them from discovery. Sanchez responded with a Motion to Stay Consideration of Defendants' Motion for Summary Judgment (filing 25). In her Motion to Stay, Sanchez also asked the Court to permit discovery. (*Id.* at 2.) On February 29, 2012, Magistrate Judge Zwart issued a Memorandum and Order (filing 36) granting defendants' Motion to Stay Discovery and Further Proceedings (filing 22) and denying Sanchez's Motion to Stay (filing 25).

This matter is before the Court on Sanchez's Objection (filing 37) to Magistrate Judge Zwart's Order. For the reasons discussed below, Sanchez's Objection (filing 37) is denied. However, per the Magistrate Judge's Order, the Court has conducted a review of the pleadings, the evidence submitted by the parties, and Sanchez's affidavits submitted pursuant to Federal Rule of Civil Procedure 56(d). The Court finds that Sanchez has alleged sufficient facts in her complaint and affidavits to permit limited discovery under Rule 56(d). Specifically, the defendants will produce all video (and audio) recordings of the events underlying this suit that occurred at the Alliance Police Department on September 5 and 6, 2009.

## FACTUAL BACKGROUND

The Court sets forth the following narrative, taken largely from Sanchez's complaint, solely for background purposes of the present Memorandum and Order. This is complicated by the fact that Sanchez has "no personal recollection of the events of September 6, 2009, in the Alliance Police Department leading up to [her] arrest." (Filing 26-1, at ¶ 3.) In her complaint, Sanchez based her version of the events of September 5 and 6, 2009, largely on the testimony of Bremer and Cardenas given at a preliminary hearing in the County Court of Box Butte County, Nebraska. (*See* filing 20-5.) Sanchez appears to accept much of their version of the facts. In a few key places, however, Sanchez is careful to allege only that certain events occurred *according to* Bremer and Cardenas.

On the late evening of September 5, 2009, through the early morning of September 6, Sanchez was attending a party with friends at a house in Alliance, Nebraska. (Filing 1, at ¶ 13.) She remembers being handed a cup of beer and having a few sips. (*Id.* at ¶ 14.) She believes that someone at the house slipped drugs into her drink that night. (*Id.*) She stated in her affidavit that she did not voluntarily or knowingly ingest any illegal or hallucinogenic substances between September 5 and 6. (Filing 26-1, at ¶ 4.) Sanchez alleges that at some point that evening, she was sexually assaulted by one or more males. (Filing 1, at ¶ 15.)

On September 6, 2009, at approximately 3:20 a.m., Sanchez arrived in the lobby of the Alliance Police Department. (*Id.* at ¶ 16.) She was met there by Bremer and Cardenas. (*Id.* at ¶ 17–18.) According to Bremer, Sanchez was extremely "wound up" and excited, and kept yelling that someone was after her and that she had been sexually assaulted. (*Id.* at ¶ 19.) At the preliminary hearing, both Bremer and Cardenas testified that Sanchez did not appear to be thinking clearly. (*Id.*)

Cardenas, who is female, was able to approach Sanchez and calm her down. (*Id.* at ¶ 20.) Cardenas testified that Sanchez was less belligerent with her than with Bremer, who is male. (*Id.*) The police contacted the Alliance Fire Department for assistance taking Sanchez to the hospital to perform a sexual assault examination. (*Id.* at ¶¶ 21, 25.) Cardenas succeeded in getting Sanchez to sit down. (*Id.* at ¶ 22.) Sanchez continued to be frightened by the presence of men in the lobby and yelled at Bremer to leave. (*Id.*) Bremer did not wish to leave Cardenas, who was still a trainee (filing 20-1, at ¶ 2), alone in the room with Sanchez. (Filing 20-5, at 11.)

At some point, a firefighter or emergency medical technician (EMT), who was a male, entered the lobby, and Sanchez became even more frightened and agitated. (Filing 1, at ¶ 23.) She picked up the chair next to her. (*Id.*) While she was lifting the chair up from the ground, its leg hit Cardenas in the shin. (*Id.*) Sanchez alleges this was inadvertent. (*Id.*) According to Bremer and Cardenas, Sanchez then began to swing the chair to the left and right before Cardenas was able to push the chair down to the floor. (*Id.*) Bremer stated in an affidavit that Sanchez was attempting to swing the chair at Cardenas. (Filing 20-2, at ¶ 6.) Cardenas stated that Sanchez was attempting to throw the chair at her. (Filing 20-1, at ¶ 10.) Cardenas was able to push the chair back to the floor. (Filing 1, at ¶ 23.) Bremer testified that there was a video camera in the lobby, that it was recording at that time, and that there exists a tape of this recording. (Filing 20-5, at 8.) Sanchez has not been allowed to view this recording, nor is it before the Court.

Bremer then placed Sanchez in handcuffs. (Filing 1, at ¶ 23.) Bremer testified that Sanchez, who was barefoot, began kicking backwards and making contact with his shins. (*Id.* at 24; Filing 20-5, at 12–13.) Sanchez was then placed in leg shackles and handcuffed to a transport belt, and taken to a hospital for a sexual assault examination. (Filing 1, at ¶ 25.) After being medically cleared by the hospital, she was taken to the county jail, where Bremer completed an affidavit for custody stating that he had arrested Sanchez for second degree assault and second degree assault on an officer. (*Id.* at ¶ 26.) Soon thereafter, the hospital informed Cardenas that the exam revealed no signs of sexual intercourse. (Filing 20-1, at ¶ 26.)

Sanchez was detained in the county jail for 11 days before charges were filed; after 24 days her family posted bond. (Filing 1, at ¶ 27.) Sanchez alleges that the police took no further steps in investigating her sexual assault. (*Id.* at ¶ 28.) On February 26, 2010, in response to a plea in abatement filed by Sanchez's counsel, the Box Butte County District Court dismissed the case against Sanchez with prejudice, noting that there was no evidence of injury to support the State's charges and criticizing the treatment of Sanchez as "'a terrible example of police serving and protecting the public.'" (*Id.* at ¶ 29.) Sanchez alleges that she was wrongfully and excessively seized, and wrongfully charged, and that as a result, she has suffered various injuries and damages including: pain and suffering, humiliation, loss of enjoyment of life, serious psychological injuries, and attorney fees incurred in defending the charges against her. (*Id.* at ¶ 31, 34–35.)

## STANDARD OF REVIEW

Sanchez asks this Court to conduct a *de novo* review of the Magistrate Judge's Order. However, a district court may reconsider a magistrate judge's ruling on non-dispositive pretrial matters only where it has been shown that the ruling is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); *Ferguson v. United States,* 484 F.3d 1068, 1076 (8th Cir. 2007).

## DISCUSSION

The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity is an immunity from suit, not simply from liability. *Janis v. Biesheuvel,* 428 F.3d 795, 800 (8th Cir. 2005). Its purpose is to avoid subjecting government officials either to the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. *Id.*

In evaluating claims of qualified immunity, a court examines (1) whether the facts that a plaintiff has alleged (see Fed. Rules Civ. Proc. 12(b)(6), (c)) or shown (see Rules 50, 56) make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct. *Pearson,* 555 U.S. at 232. In determining whether a right was "clearly established," it is not sufficient to find that the right existed in the general sense (e.g., the Fourth Amendment right to be free from unreasonable seizures). Rather, the right the official is alleged to have violated must have been clearly established in a more particularized sense: The contours of the right must be sufficiently clear

that a reasonable official would understand that what he or she is doing violates that right. *Shannon v. Koehler*, 616 F.3d 855, 964 (8th Cir. 2010). This does not mean that the very action in question must have previously been held unlawful, but in the light of preexisting law, the unlawfulness must be apparent. *Id*.

Although it is often the better approach to first determine whether the plaintiff has alleged or shown a violation of the right, and then determine whether the right was clearly established at the time, *Lykken v. Brady*, 622 F.3d 925, 930 (8th Cir. 2010), courts have the discretion to address these questions in either order. *Id*.

In her Motion to Stay Consideration of Defendants' Motion for Summary Judgment (filing 25), Sanchez asked the Court to permit discovery. *Id*. at 2. Specifically, she requested access to the following evidence: (1) security footage from inside the Alliance Police Department of the incident in question; (2) portions of the Alliance Police Department Policy Manual relating to the "proper procedure when encountered with a victim alleging rape in an emergency situation;" and (3) depositions of various eye-witnesses to the incident in question, including members of the Alliance Volunteer Fire Department and EMT first responders on the scene, and other witnesses, including the dispatcher officer at the Alliance Police Station, and "other Alliance citizens [who have sought] assistance from the Alliance Police Department." (Filing 26-2, at ¶ 8.)

In her Memorandum and Order, the Magistrate Judge held, in relevant part:

> The court will not impose the obligation of discovery on the defendants absent an initial showing that the facts as alleged by the plaintiff "make out a violation of a constitutional right" and the constitutional right violated was clearly established at the time of defendant's alleged misconduct. *Stepnes v. Ritschel*, 663 F.3d 952, 960 (8th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). If, upon review of the plaintiff's allegations, "the court is satisfied that a reasonable officer would or should have known that he or she was violating well established law, discovery may proceed to enable the defense to show that plaintiff's allegations are not supported by factual evidence." *Gainor v. Rogers*, 973 F.2d 1379, 1387 (8th Cir. 1992) .
>
> The defendants have moved for summary judgment, claiming the facts as alleged by the plaintiff do not support a claim that the defendants violated plaintiff's clearly established constitutional rights. This analysis can proceed before Judge

>Gerrard based on the plaintiff's allegations alone; discovery to bolster (or refute) those allegations is unnecessary and, as such, impermissible at this time.

(Filing 36, at 2–3.)

This Court agrees generally with the Magistrate Judge's statement of the law and with the procedures set forth in her Order. It is well established that if the allegations in a plaintiff's complaint do not "state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Conversely, if the Court determines that, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law, the plaintiff will ordinarily be entitled to some discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998).

However, defendants' motion for summary judgment did not simply challenge the allegations of Sanchez's complaint. Instead, defendants submitted evidence and challenged Sanchez to meet the usual Rule 56 standard: to move beyond her pleadings and produce evidence demonstrating a genuine issue of material fact such that her claim should proceed to trial. *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009). In considering a summary judgment motion based on qualified immunity, courts afford the plaintiff's pleadings no presumption of truthfulness. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("On summary judgment . . . the plaintiff can no longer rest on the pleadings, see Fed. Rule Civ. Proc. 56, and the court looks to the evidence before it (in the light most favorable to the plaintiff) . . . ."); *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009) (same); *Butler v. San Diego Dist. Attorney's Office*, 370 F.3d 956, 962–64 (9th Cir. 2004) (same).

But in response to Sanchez's objection to the Magistrate Judge's Order, defendants for the first time assert that "[t]he facts alleged by the plaintiff fail to make an initial showing of a violation of a constitutional right, and therefore the defendants should not be burdened with the obligation of discovery." (Filing 39, at 1.) The Court will take this opportunity to examine the allegations in Sanchez's complaint and, assuming their truth, determine whether defendants' conduct violated clearly established law. *Crawford-El*, 523 U.S. at 598.

**A.  Sanchez's Allegations**

Stated briefly, Sanchez alleges the following version of events: She arrived at the Alliance Police Department on September 6, 2009, distraught and in search of help after being drugged and sexually assaulted. She was

- 6 -

still frightened, and she was further alarmed by the presence of Bremer, a male, in the room. At some point, one or more firemen or EMTs arrived, at least some of whom were males. She yelled at these men to leave, but they did not. When another male came into the room, Sanchez became even more alarmed. She picked up the chair next to her, and while she was lifting it, it "inadvertently" hit Cardenas in the shin. (Filing 1, at ¶ 23.)

After this point, Sanchez alleges only that, *according to Bremer and Cardenas*, she began to swing the chair around, and that after she was placed in handcuffs, she began to kick Bremer in the shins. (*Id.* at ¶¶ 23–24.) Much of what happened after this point is either not in dispute or not relevant, because Sanchez's entire case appears to boil down to the contention that, even after she picked up the chair, Bremer and Cardenas lacked probable cause to arrest her. She also claims that the officers used excessive force in seizing her.

The allegations in Sanchez's complaint are consistent with any of the following potential scenarios: (1) she did not swing the chair around at all, but merely picked it up and inadvertently hit Cardenas in the shin; (2) that she might have swung it around, but not in a way that could be perceived as (objectively) threatening to the officers; or (3) even if she did swing it around, it was somehow done in a way such that the officers lacked probable cause to arrest her.

Because Sanchez has no memory of the events of that night, she cannot allege facts supporting a lack of probable cause with any more specificity. She has, however, alleged that the Box Butte County District Court dismissed the case against her and noted that there was no evidence of injury to Bremer or Cardenas to support the State's charges. (*Id.*, at ¶ 29.) This provides at least some support to her allegations.

### B.   Violation of a Constitutional Right

The Court finds that, at this preliminary stage, and given her lack of memory, Sanchez has satisfied the first prong of the inquiry into qualified immunity: she has pled a violation of her Fourth Amendment right not to be arrested without probable cause. [3]

---

[3] At this point, the Court need not determine whether, if Sanchez's illegal seizure claim does not pan out, she has still alleged an independently viable excessive force claim, because the discovery sought by Sanchez is equally relevant to both claims. However, the Court notes that, while "there is no uniform requirement that a plaintiff show more than *de minimis* injury to establish an application of excessive force. . . . '[f]or the application of handcuffs to amount to excessive force, there must be something beyond

- 7 -

A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause. *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011). Probable cause exists when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense. *Id.* at 523.

Additionally, it is important to note that the subjective reason given by an officer for making an arrest "need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). In fact, the offense actually establishing probable cause need not even be "'closely related' to, and based on the same conduct as, the offense identified by the arresting officer at the time of arrest." *Id.* Although Bremer stated that Sanchez was being charged with second degree assault and second degree assault on an officer,[4] probable cause would exist for Sanchez's arrest even if the facts only supported a lesser charge, or another charge altogether.

The Court begins with the statutes cited for Sanchez's arrest. A person commits assault in the second degree if he or she: "(a) Intentionally or knowingly causes bodily injury to another person with a dangerous instrument; [or] (b) Recklessly causes *serious* bodily injury to another person with a dangerous instrument." Neb. Rev. Stat. § 28-309 (emphasis supplied). A person commits assault on an officer in the second degree if he or she intentionally, knowingly, or recklessly causes bodily injury to a peace officer with a dangerous instrument. Neb. Rev. Stat. § 28-930. Unlike assault in the second degree, assault on an officer in the second degree does not require *serious* bodily injury. "Bodily injury" is defined as "physical pain, illness, or any impairment of physical condition." Neb. Rev. Stat. § 28-109(4) (Reissue 2008).

Leaving aside the question whether a chair qualifies as a "dangerous instrument," Bremer and Cardenas could potentially have arrested Sanchez for assault in the third degree, which has the same elements as assault in the second degree, but does not require the use of a dangerous instrument, and can also be committed simply by "[t]hreaten[ing] another in a menacing manner." Neb. Rev. Stat. § 28-310 (Reissue 2008). Similarly, assault on an officer in the third degree has the same elements as its second degree sibling,

---

minor injuries.'" *Chambers v. Pennycook*, 641 F.3d 898, 907 (8th Cir. 2011) (quoting *Hanig v. Lee*, 415 F.3d 822, 824 (8th Cir. 2005)). Sanchez has not alleged any injuries, and it is not clear from Sanchez's complaint whether she is alleging the use of any excessive force other than her handcuffing.

[4] Neb. Rev. Stat. §§ 28-309, 28-930.

- 8 -

but does not require the use of a dangerous instrument. Neb. Rev. Stat. § 28-931 (Reissue 2008).

Sanchez's allegations leave open the possibility that she simply picked up the chair, that she inadvertently (but not recklessly) bumped Cardenas' shin while doing so, and that she did not swing the chair about in a threatening or menacing manner. Under this factual scenario, Bremer and Cardenas would not have had probable cause to arrest Sanchez for any of the above crimes. Sanchez's allegations leave open the possibility this bump was so minor it did not threaten Cardenas "in a menacing manner," nor cause Cardenas any pain, and thus, no "bodily injury" under even the most expansive definition. Additionally, Sanchez does not allege that she kicked Bremer in the shins, nor that, if she did, it caused any pain, injury, posed any threat, or was done in a menacing manner.

**C. Violation of a Clearly Established Constitutional Right**

Even if Bremer and Cardenas lacked probable cause to arrest Sanchez, the Court would not find them to have violated a clearly established right if there was at least "arguable probable cause." Walker v. City of Pine Bluff, 414 F.3d 989, 992 (8th Cir. 2005). Arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is based in probable cause if the mistake is "objectively reasonable." Borgman, 646 F.3d at 523.

This necessarily entails examining the facts and circumstances confronting the officers at that time, but based only on Sanchez's pleadings, the relevant facts are mostly lacking. Still, if Sanchez merely lifted the chair and bumped Cardenas' shin, without causing pain, and without doing so in a threatening manner, any belief by Bremer and Cardenas that Sanchez had committed or was about to commit one of the above crimes would not have been objectively reasonable.

This lack of factual clarity is to be expected at the pre-summary judgment stage. Any qualified immunity inquiry at this stage is, "unlikely to be very specific, given that federal civil practice is based on notice pleading, where great specificity is not required, . . . and that there is no heightened pleading requirement for civil rights cases." Riverdale Mills Corp. v. Pimpare, 392 F.3d 55, 60–61 (1st Cir. 2004) (citations omitted).[5] This inquiry will "usually gain specificity at this summary judgment stage because of the ability to determine then whether plaintiff's claim survives in light of all the uncontested facts and any contested facts looked at in the plaintiff's favor, rather than just the allegations that appear on the face of the complaint." *Id.*

---

[5] *Riverdale* discussed the "first prong" of the qualified immunity inquiry, but its reasoning applies with equal, if not greater, force to the second prong.

- 9 -

Moreover, until now, defendants chose not to challenge Sanchez's § 1983 claims *as pleaded*. (*See* Filings 10 and 11.)

Qualified immunity does not "create an immunity from *all* discovery." *Crawford-El*, 523 U.S. at 593 n.14. Rather, the doctrine seeks to protect officials from "'broad-reaching' discovery," and "limited discovery may sometimes be necessary before the district court can resolve a motion for summary judgment based on qualified immunity." *Id*. (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As the Second Circuit stated in *Castro v. United States*:

> Where the claimant's description of the events suggests that the defendants' conduct was unreasonable, and the facts that the defendants claim are dispositive are solely within the knowledge of the defendants and their collaborators, summary judgment can rarely be granted without allowing the plaintiff an opportunity for discovery as to the questions bearing on the defendants' claims of immunity.

34 F.3d 106, 112 (2d Cir. 1994); *cf. Lovelace v. Delo*, 47 F.3d 286, 287 (8th Cir. 1995) ("[I]f the plaintiffs' allegations state a claim of violation of clearly established law and the parties disagree as to what actions the law enforcement officers took, discovery may be appropriate for the limited purpose of addressing the issue of qualified immunity."). In this case it is not the actions of the police officers, but the actions of plaintiff, but like the preceding cases, the only evidence is solely within the defendants' possession.

**D.    The Extent of Discovery Sanchez May Conduct**

Having examined the pleadings and concluding that some discovery is appropriate, despite defendant's assertion of qualified immunity, the Court must now "exercise its discretion in a way that protects the substance of the qualified immunity defense . . . so that officials are not subjected to unnecessary and burdensome discovery or trial proceedings." *Crawford–El*, 523 U.S. at 597–98.

Pursuant to Federal Rule of Civil Procedure 56(d), if the party opposing summary judgment shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the Court may (1) defer considering the motion [for summary judgment] or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order. Under Rule 56(d), the party opposing summary judgment is required to file an affidavit with the district court showing what

specific facts further discovery *might* uncover. *Anuforo v. C.I.R.*, 614 F.3d 799, 809 (8th Cir. 2010) (emphasis supplied).

Sanchez has satisfied this standard as to the video recording of the events in the lobby. Although Sanchez cannot say what the video will actually show, since she does not remember, it will show what happened on the night in question. The video is clearly material to the pending summary judgment motion: it will either corroborate Sanchez's version of the facts or the testimony of officers Bremer and Cardenas. After receiving the video, Sanchez shall respond to defendants' Motion for Summary Judgment.

At this time, the additional discovery requested by Sanchez is not warranted. If the video does not depict the events in question, or does not depict them clearly, Sanchez may present the Court with additional requests for discovery under Rule 56(d).

Accordingly,

IT IS ORDERED:

1. The Objection (filing 37) filed by plaintiff Jessica M. Sanchez is denied;

2. Sanchez's request for discovery is granted in part: on or before May 10, 2012, defendants shall produce any and all video recordings of the events underlying this suit that occurred at the Alliance Police Department on September 5 and 6, 2009; and

3. Sanchez shall file any brief in opposition to defendants' Motion for Summary Judgment on or before May 24, 2012, and defendants shall file any reply brief on or before June 7, 2012.

Dated this 23rd day of April, 2012.

BY THE COURT:

John M. Gerrard
United States District Judge