IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESSICA M. SANCHEZ, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW J. BREMER; JAMIE CARDENAS; AND CITY OF ALLIANCE, <br><br> Defendants. | 8:11-CV-314 <br><br> MEMORANDUM AND ORDER |

This matter is before the Court on the motion to stay (filing 44) filed by plaintiff Jessica Sanchez and the objection (filing 49) filed by defendants Andrew Bremer, Jamie Cardenas, and the City of Alliance. Sanchez moves the Court to stay defendants' motion for summary judgment (filing 19). The Court has considered the parties' submissions (filings 43, 49, 50, and 52) and Sanchez's supplemental index of evidence (filing 51). For the reasons discussed below, Sanchez's motion to stay is denied, and defendants' objection is sustained.

## I. FACTUAL AND PROCEDURAL BACKGROUND
### A. The Underlying Incident

The Court incorporates by reference the factual background set forth in its previous memorandum and order of April 23, 2012 (filing 42, at 2–4) and provides the following brief summary of the case. Bremer and Cardenas were police officers, employed by the third defendant, the City of Alliance, Nebraska. Sanchez's suit arises from the events leading up to her arrest on the early morning of September 6, 2009. Sanchez has "no personal recollection" of the events directly leading up to her arrest (filing 26-1, at ¶ 3) but nevertheless alleges the following version of events.

Sanchez arrived at the lobby of the Alliance Police Department ("APD") headquarters in the early hours of September 6, 2009. She alleges that hours earlier, she had been drugged and sexually assaulted. Sanchez was distraught and in search of help. She was still frightened when she arrived, and she was further alarmed by the presence of Bremer, a male, in the room. At some point, one or more firemen or EMTs arrived, at least some of whom

were males. She yelled at these men to leave, but they did not. When another male came into the room, Sanchez became even more alarmed. She picked up the chair next to her, and while she was lifting it, the chair "inadvertently" hit Cardenas in the shin. Filing 1, at ¶ 23. After this point, Sanchez alleges only that, *according to Bremer and Cardenas*, she began to swing the chair around, and to kick Bremer in the shins after she was restrained and placed in handcuffs. Filing 1, at ¶¶ 23–24.

Sanchez was charged with assault in the second degree and assault on an officer in the second degree.[1] The charges were ultimately dismissed, following a preliminary hearing before the County Court of Box Butte County, Nebraska. *See* filing 20-5. At this hearing, Bremer testified that there was a video camera in the lobby and that there was a tape of their encounter with Sanchez. Filing 20-5, at 8. Sanchez has not been allowed to see any such tape, nor is it before the Court.

Sanchez claims that she was wrongfully arrested and subjected to excessive force by Bremer and Cardenas, and that she was wrongfully charged with assault in the second degree and assault on an officer in the second degree. Sanchez brings her claims under 42 U.S.C. § 1983, alleging that Bremer and Cardenas violated her right to be free from unreasonable seizures under the Fourth Amendment; that Bremer is liable as a supervisor for Cardenas' actions; and that the City of Alliance caused these violations through its policies and procedures. Filing 1, at ¶¶ 11, 33–45. Sanchez seeks recovery against Bremer in his individual and official capacities, and against Cardenas in her individual capacity. Filing 1, at ¶¶ 8–12.

### B. Procedural Background

On December 16, 2011, defendants moved for summary judgment (filing 19) and filed a motion to stay discovery and further proceedings (filing 22). Bremer and Cardenas contend that the doctrine of qualified immunity bars Sanchez's § 1983 claims and, furthermore, shields them from discovery. They have also moved for summary judgment on the merits. Filing 19. The City of Alliance has also moved for summary judgment on the merits, arguing that it is not independently liable to Sanchez. Filing 19. In response, Sanchez moved the Court to stay consideration of defendants' motion for summary judgment and allow her to begin discovery. *See* filings 25, 36, and 37.

In its previous order of April 23, 2012, the Court found that Sanchez had alleged sufficient facts in her complaint and affidavits to permit limited discovery under Fed. R. Civ. P. 56(d). Filing 42. Specifically, the Court

---

[1] Neb. Rev. Stat. §§ 28-309, 28-930 (Supp. 2009).

- 2 -

ordered defendants to produce all video recordings of the events underlying this suit. Filing 42, at 11.

### C. Defendants' Response

Defendants responded, not by producing any video recordings, but with affidavits from Bremer and E. John Kiss, the Chief of the APD. Filing 43, at 3–6. Kiss and Bremer stated that "[n]o such audio or video tapes currently exist." Filing 43, at 3, 5. Kiss explained that the APD shares its lobby with the Box Butte County Sheriff's Department (the "Sheriff's Department"). Filing 43, at 3. The camera and video system in the lobby were operated and maintained by the Sheriff's Department, not the APD. Filing 43, at 3. In September 2009, the normal practice was to maintain the recordings on a 7-day loop. Filing 43, at 3. Kiss also averred that no one with the APD instructed the Sheriff's Department to destroy any recordings. Filing 43, at 4. Bremer explained that, after he testified at the preliminary hearing, he and Cardenas viewed the video at the Sheriff's Department. Filing 43, at 5–6. Bremer also stated that, at the time he testified at the preliminary hearing, he had been unaware that the Sheriff's Department recorded over the videos every 7 days. Filing 43, at 6.

### D. Sanchez's New Motion to Stay

In response to these affidavits, Sanchez filed a new motion to stay consideration of defendants' motion for summary judgment. Filing 44. Sanchez argues that Bremer has given inconsistent statements regarding the existence of the tape and that the failure to preserve the tape may amount to spoliation of evidence. Filing 44, at 2. Sanchez requests the Court to allow additional discovery, including:

(1) a deposition of Bremer into his purportedly inconsistent statements and the facts surrounding the failure to preserve the tape;
(2) depositions of two members of the Alliance Fire Department who were present at the time of Sanchez's arrest and have refused to be interviewed without a subpoena; and
(3) the issuance of subpoenas to the Box Butte County Attorney and the Sheriff's Department requesting any copies of the video in their possession.

Filing 44, at 3.

Sanchez also filed a motion requesting leave to file supplemental evidence (filing 50), including an affidavit from Rae Jean Thomas, an administrative deputy with the Sheriff's Department. Filing 51-1. The Court previously granted that motion and has considered the supplemental

- 3 -

evidence. Filing 53. Thomas was responsible for maintaining and operating the video surveillance system and for making copies of videos when requested. Filing 51-1, at ¶ 3. She verified that the video surveillance system was working on September 6, 2009. Filing 51-1, at ¶ 5. Thomas confirmed that videos were generally kept for only 7 days before being recorded over, but added that preserving videos was a "common and standard procedure." Filing 51-1, at ¶ 6. Thomas received a request from the APD to preserve a copy of the recording of the Sanchez incident. Filing 51-1, at ¶ 4. She found the video, made a copy, and delivered it to the APD. Filing 51-1, at ¶¶ 7–8. Thomas does not state when any of this occurred.

## II. ANALYSIS

The Court's previous order set forth the standards governing qualified immunity in greater detail, and the Court provides only a brief overview here. *See* filing 42, at 4–10. The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity provides officials with immunity from suit, not simply from liability. *Janis v. Biesheuvel*, 428 F.3d 795, 800 (8th Cir. 2005). Its purpose is to avoid subjecting government officials to the costs of trial or to the burdens of broad-reaching discovery in cases where the legal norms the officials are alleged to have violated were not clearly established at the time. *Id.* To determine if defendants are entitled to qualified immunity, the Court must ask (1) whether Sanchez has stated a violation of a constitutional right; and (2) whether that right was clearly established at the time, such that a reasonable officer would have known that his or her conduct violated the law. *Pearson*, 555 U.S. at 232.

If the allegations in a plaintiff's complaint do not state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Conversely, if the Court determines that, assuming the truth of the plaintiff's allegations, the official's conduct violated clearly established law, the plaintiff will ordinarily be entitled to some discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *see also Castro v. United States*, 34 F.3d 106, 112 (2d Cir. 1994); *cf. Lovelace v. Delo*, 47 F.3d 286, 287 (8th Cir. 1995).

Qualified immunity is an affirmative defense, and defendants carry the burden of proof. *Harrington v. City of Council Bluffs, Iowa*, 678 F.3d 676, 679 (8th Cir. 2012). The plaintiff, however, must demonstrate that the law was clearly established at the time of the alleged violation. *Id.* Defendants have

offered evidence that they did not violate Sanchez's rights (clearly established or not). *See* filing 20; filing 42, at 2–4. To defend against the pending motion for summary judgment, Sanchez must come forward with evidence that creates an issue of material fact as to defendants' claim of qualified immunity and the merits of her claims. Fed. R. Civ. P. 56(c).

The Court previously found that Sanchez had alleged sufficient facts in her complaint and affidavits to permit limited discovery under Fed. R. Civ. P. 56(d). Under Rule 56(d), a party opposing summary judgment may seek a continuance to conduct discovery, but the party must file an affidavit showing what specific facts further discovery is expected to uncover. *Anuforo v. C.I.R., 614 F.3d 799, 809 (8th Cir. 2010)*.

The Court's discretion to allow discovery under Rule 56(d) is further limited when a summary judgment motion is based on qualified immunity, because insubstantial lawsuits against government officials should be resolved prior to discovery and on summary judgment if possible. *Jones v. City and Cnty. of Denver, Colo., 854 F.2d 1206, 1211 (10th Cir. 1988)*. The nonmovant must show "how discovery will enable [it] to rebut a defendant's showing of objective reasonableness." *Id.* In other words, the nonmovant must demonstrate a "connection between the information [it] would seek in discovery and the validity of the officers' qualified immunity assertion." *Id.*

In its previous order, the Court found that Sanchez had satisfied Rule 56(d) as to discovery of the video:

> Although Sanchez cannot say what the video will actually show, since she does not remember, it will show what happened on the night in question. The video is clearly material to the pending summary judgment motion: it will either corroborate Sanchez's version of the facts or the testimony of officers Bremer and Cardenas.

Filing 42, at 11.

The Court found that Sanchez's complaint plausibly alleged the violation of a clearly established right—but just barely. Sanchez made a very limited showing under Rule 56(d), and the Court permitted correspondingly limited discovery. Obtaining the video should have been easy, and did not risk imposing a burden on defendants that would cause any disruption of government affairs. *See Marksmeier v. Davie, 622 F.3d 896, 903 (8th Cir. 2010)*. The Court also recognized the difficult situation Sanchez was placed in: unable to conduct discovery and unable to remember what occurred, purportedly through no fault of her own.

Now the video has come up missing, and Sanchez has requested additional discovery. But little else has changed. The new evidence before the Court only shows that at one time the APD had a copy of the video, but now it does not. The Court will not impose additional discovery without a greater showing by Sanchez of what specific facts further discovery might uncover, and how these facts would enable her to rebut defendants' claim of qualified immunity. Rule 56(d) "does not condone a fishing expedition where a plaintiff merely hopes to uncover some possible evidence of a constitutional violation." *Duffy v. Wolle*, 123 F.3d 1026, 1041 (8th Cir. 1997) *overruled on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011). Therefore, as explained in greater detail below, the Court finds that Sanchez is not entitled to the requested discovery.

### A. Deposition of Bremer and Evidence of Spoliation

Sanchez seeks to depose Bremer to find out what happened to the video and whether it was intentionally destroyed by defendants. She also wishes to depose Bremer regarding his purportedly inconsistent statements concerning the tape. The Court is not convinced this discovery is warranted. Sanchez has presented no evidence of spoliation, and even if she could uncover such evidence, it would not avail her at summary judgment. Additionally, the Court does not see any significant inconsistencies in Bremer's statements.

Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation. *Micron Technology, Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011). To find spoliation the Court must determine that the party who held the evidence intentionally destroyed it with a desire to suppress the truth. *Bakhtiari v. Lutz*, 507 F.3d 1132, 1136 (8th Cir. 2007). The party who desires access to the evidence must also show prejudice. *Stevenson v. Union Pacific R. Co.*, 354 F.3d 739, 748 (8th Cir. 2004). Federal courts may impose a range of sanctions and remedies when a party abuses the judicial process by destroying evidence. *Id.* at 745–46. This includes giving an "adverse inference" instruction, precluding the offending party from offering evidence on the matter, or even settling a disputed matter of fact. *Id.* at 750–51.

A charge of spoliation is a serious accusation, and the Court will not allow discovery into the matter without some basis for suspecting wrongdoing by defendants. Sanchez has not presented any evidence that defendants intentionally destroyed the video with a desire to suppress the truth. And because defendants have presented a colorable claim of qualified immunity, the Court must limit discovery to the issue of qualified immunity, so that defendants are not exposed to unnecessary and burdensome discovery or trial proceedings. *Crawford–El*, 523 U.S. at 597–98. Inquiries into spoliation, on

the facts before the Court, would be straying too far from the limited discovery the Court may allow.

The evidence before the Court amounts to only a rough timeline. The incident Sanchez complains of occurred in September 2009. Following the preliminary hearing in October, the charges against Sanchez were dismissed on February 26, 2010. Filing 1, at ¶ 29. Sanchez filed her complaint approximately 18 months later, on September 1, 2011. Filing 1, at 14. At some point in between, Deputy Thomas made a copy of the video for the APD. Filing 51-1. Presumably this occurred within 7 days of the tape's creation, or it would have already been recorded over pursuant to the Sheriff's Department's practice. Filing 51-1, at ¶ 6. Kiss and Bremer averred that no copy of the tape "currently exists" and that no one in the APD ordered the Sheriff's Department to destroy their copy of the tape. Filing 43, at 3–6. So, all Sanchez has shown is that, at some point, the APD had a copy of the tape, and now they do not. Without knowing when—in the 2 years between the incident and Sanchez's suit—or under what circumstances the tape was lost or destroyed, the Court will not infer an intent to destroy evidence and hide the truth. The most reasonable inference, in fact, is that the APD asked for a copy of the videotape as potential evidence in Sanchez' criminal prosecution, but discarded the tape after the criminal charges against Sanchez were dismissed.

Even if Sanchez could show spoliation, it will not matter if she cannot present some further evidence of what occurred on September 6, 2009. At summary judgment, Sanchez will be unable to rest on her pleadings, *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009), and the Court will have to evaluate defendants' claims of qualified immunity based on the facts in the record. Sanchez must come forward with evidence that challenges Bremer and Cardenas' accounts of what occurred, sufficient to raise an issue of fact. Fed. R. Civ. P. 56(c). Evidence of spoliation will not suffice, even when combined with any sanctions the Court could impose.

The most common sanction, an adverse inference instruction, would clearly be insufficient. With an adverse inference instruction, the jury is told that it may draw an inference that the evidence destroyed was unfavorable to the party who destroyed it. *Stevenson*, 354 F.3d at 746. "[A]t the margin, where the innocent party has produced some (not insubstantial) evidence in support of his claim, the intentional destruction of relevant evidence by the opposing party may push a claim that might not otherwise survive summary judgment over the line." *Kronisch v. United States*, 150 F.3d 112, 128 (2d Cir. 1998), *abrogated on other grounds by Rotella v. Wood*, 528 U.S. 549 (2000). But an adverse inference alone is not enough to survive summary judgment when a plaintiff has produced no other evidence, or "utterly inadequate"

evidence. *Id.* A jury might infer that the tape contained some evidence damaging to defendants, but without any indication of what the tape might show, this would amount to nothing more than speculation. And at the summary judgment stage, if defendants meet their burden under Rule 56(c), Sanchez must do more than simply show there is some "metaphysical doubt" as to the material facts. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Spoliation may also support an inference that the contents of a missing document are as alleged by the party prejudiced by its absence. *Wolfe v. Virginia Birth-Related Neurological Injury Compensation Program*, 580 S.E.2d 467, 475 (Va. Ct. App. 2003). But this will not help Sanchez, because she does not remember what happened and has not alleged what the video would show. Courts may also preclude the spoliating party from offering evidence on related issues in the case. *See, e.g.*, *Dillon v. Nissan Motor Co., Ltd.*, 986 F.2d 263, 266–68 (8th Cir. 1993). Again, this would not save Sanchez's complaint. Even if defendants were barred from presenting evidence supporting their claim of qualified immunity—on which they have the burden of proof, *Harrington*, 678 F.3d at 679—defendants have also moved for summary judgment on the merits, where Sanchez bears the burden of proof. And if neither party presents evidence, defendants would still prevail.

In short, evidence of spoliation would not materially affect the outcome of defendants' motion for summary judgment. Nor is it relevant to the issue of qualified immunity. Sanchez's request for additional discovery on the issue of spoliation will be denied.

Nor will the Court allow discovery into any purportedly inconsistent statements by Bremer. As with spoliation, any resulting evidence that merely cast doubt on Bremer's credibility would not suffice on summary judgment. The Court also fails to see any significant inconsistencies in Bremer's statements. At the preliminary hearing, Bremer testified that a tape existed. Filing 20-5, at 8. He later averred that the tape no longer exists, and that when he testified at the preliminary hearing, he was unaware that the Sheriff's office recorded over videos every 7 days. Filing 43, at 5–6. Bremer has adequately explained any inconsistencies, and further discovery would provide little, if any help.

### B. Depositions of Alliance Fire Department Personnel

Sanchez renews her request to depose members of the Alliance Fire Department who were present when she was arrested. But she gives the Court no reason to believe their statements would contradict the affidavits of Bremer and Cardenas. Allowing Sanchez to depose these personnel would amount to an unnecessary burden and is not warranted on the evidence before the Court.

**C. Subpoenas to the Sheriff's Department and County Attorney**

Sanchez also asks that she be allowed to subpoena the Box Butte County Attorney and the Sheriff's Department for any copies of the tape in their possession. When the Court previously permitted discovery of the tape, there was evidence a tape actually existed (Bremer's testimony at the preliminary hearing). This time around, Sanchez has offered the Court no reason to believe either office possesses a copy of the tape. Therefore, additional discovery into the existence of the tape is not warranted at this time.

### III. CONCLUSION

Sanchez has not shown what specific facts further discovery might uncover, nor how these facts would enable her to rebut defendants' claim of qualified immunity. Because defendants have raised a colorable claim of qualified immunity, the Court is charged with limiting discovery to prevent unnecessary expenditures of government officials' time and resources. *Biesheuvel*, 428 F.3d at 800. Defendants' motion for summary judgment has been pending for over 6 months; and it is now time to move forward. Accordingly,

IT IS ORDERED:

1. The motion to stay (filing 44) filed by plaintiff Jessica M. Sanchez is denied;

2. The objection (filing 49) filed by defendants is sustained;

3. Sanchez's request for additional discovery is denied; and

4. Sanchez may file a brief in opposition to defendants' Motion for Summary Judgment on or before August 7, 2012, and defendants may file any reply brief on or before August 17, 2012.

Dated this 24th day of July, 2012.

BY THE COURT:

*John M. Gerrard*
John M. Gerrard
United States District Judge